[Cite as *State v. Chandler*, 2014-Ohio-5215.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 14CA11 |
| | : | |
| vs. | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| STEVEN CHANDLER, | : | <u>ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | **Released: 11/17/14** |

_____

APPEARANCES:

Christine D. Tailer, Georgetown, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, and Ross Greer, Highland County Assistant Prosecutor, Hillsboro, Ohio, for Appellee.
_____

McFarland, J.

{¶1} This is an appeal from a Highland County Court of Common Pleas judgment entry sentencing Appellant, Steven Chandler, after a jury found him guilty of illegal manufacture of drugs, a second degree felony in violation of R.C. 2925.04(A), and illegal assembly or possession of chemicals for the manufacture of drugs, a third degree felony in violation of R.C. 2925.041(A). On appeal, Appellant contends that 1) the trial court erred in overruling his Crim.R. 29 motion to dismiss when the State failed to present any evidence in support of the schedule of drug involved in the

offenses with which he was charged; 2) the trial court erred by instructing the jury that he could be convicted as "either the principal offender or as an accomplice," when the indictment did not set forth that he was charged with complicity; 3) the trial court erred as a matter of law in not merging together the counts of illegal manufacture and illegal assembly for purposes of sentencing; and 4) his conviction was against the manifest weight of the evidence.

{¶2} Because we conclude that Appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, we find no merit in Appellant's first and fourth assignments of error and they are, therefore, overruled. Likewise, because we conclude the trial court did not err in instructing the jury on complicity and in providing the required limiting language regarding accomplice testimony, we find no merit in Appellant's second assignment of error and it is, therefore, also overruled. Finally, in light of our conclusion that the offenses of which Appellant was convicted were performed with different conduct, they are not allied offenses of similar import. As such, we cannot conclude that the trial court erred in failing to merge Appellant's convictions for purposes of sentencing. Thus, we find no merit in Appellant's third assignment of error

and it is overruled as well.  Having found no merit in the assignments of error raised by Appellant, his convictions are affirmed.

FACTS

{¶3}  On November 1, 2013, the Highland County Sheriff's Department executed a search warrant on Appellant's residence, located at 404 Milburn Street, Greenfield, Ohio, which is located in Highland County. Upon a search of the residence, officers located several items used in the production of methamphetamine as well as a "one-pot meth lab" which was found in the freezer.  Items found in the residence included cold packs, coffee filters, clear tubing attached to the top of a bottle cap, a gas generator, and a gas mask.  A burn barrel was also found outside, which contained an old "one-pot meth lab."  During the search, it was determined that several individuals were residing in the house in addition to Appellant and his wife. These individuals included Kevin Baines, Jamie Whittkugle, Krista Adams and Dustin Lambert.  Items sent to the Ohio Bureau of Criminal Investigation and Identification (BCI & I) contained 21.5 grams of methamphetamine.  The investigation also revealed that Appellant had purchased pseudoephedrine, which is a chemical used in the manufacture of methamphetamine, on October 31, 2013, and other dates prior.  Other

residents in the house admitted to having purchased pseudoephedrine also, to either give to Appellant or Baines, to be used to make meth.

{¶4} On February 4, 2014, the Highland County Grand Jury indicted Appellant for illegal manufacture of drugs on or about November 1, 2013, a second degree felony in violation of R.C. 2925.04(A), and illegal assembly or possession of chemicals for the manufacture of drugs, a third degree felony in violation of R.C. 2925.041(A). Appellant denied the charges contained in the indictment and counsel was appointed. A bill of particulars was filed on February 28, 2014, alleging that Appellant did knowingly manufacture or engage in a part of the production of methamphetamine on November 1, 2013. The bill also alleged that Whittkugle and Adams stated they had bought pseudoephedrine for both Appellant and Baines. The bills further contained a statement by Appellant himself, which indicated Kevin Baines cooked methamphetamine in his bedroom in Appellant's house.

{¶5} The matter proceeded to a jury trial on April 21, 2014. The State introduced five witnesses, including Stanton Wheasler, an expert in substance identification and measurement with BCI&I, Sergeant Chris Bowen and Lieutenant Randy Sanders, who were both involved in the search of Appellant's residence, and Krista Adams and Jamie Whittkugle, who were residents of Appellant's house. Appellant presented no witnesses or

evidence in his defense. At the close of the State's case, Appellant moved for acquittal pursuant to Crim.R. 29(A) based upon the State's failure to introduce evidence into the record that methamphetamine was, in fact, a schedule I or II controlled substance under R.C. 3179.41. The trial court denied Appellant's motion and the matter was eventually submitted to the jury for determination, with objections being made by Appellant with regard to the trial court's decision to instruct the jury on complicity.

{¶6} After deliberating for only twenty-nine minutes, the jury found Appellant guilty of both charges as contained in the indictment. In a judgment entry dated April 21, 2014, the trial court sentenced Appellant to a six-year term of imprisonment on the illegal manufacturing conviction, and a 24-month term of imprisonment on the illegal possession or assembly conviction, to be served consecutively for a total sentence of eight years. The trial court specifically determined, on the record, that Appellant's offenses were not allied offenses of similar import. It is from this entry that Appellant now brings his timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

"I.    THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S
        CRIMINAL RULE 29 MOTION TO DISMISS WHEN THE STATE
        FAILED TO PRESENT ANY EVIDENCE IN SUPPORT OF THE

SCHEDULE OF DRUG INVOLVED IN THE OFFENSES WITH WHICH APPELLANT WAS CHARGED.

II.      THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT APPELLANT COULD BE CONVICTED AS 'EITHER THE PRINCIPAL OFFENDER OR AS AN ACCOMPLICE,' WHEN THE INDICTMENT DID NOT SET FORTH THAT APPELLANT WAS CHARGED WITH COMPLICITY.

III.     THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT MEGING [SIC] TOGETHER THE COUNTS OF ILLEGAL MANUFACTURE, IN VIOLATION OF R.C. 2925.041(A), AND ILLEGAL ASSEMBLY, IN VIOLATION OF R.C. 2925.041(A).

IV.     APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

ASSIGNMENT OF ERROR I

{¶7} In his first assignment of error, Appellant contends that the trial court erred in overruling his Crim.R. 29 motion, arguing that the State failed to present any evidence in support of the schedule of drug involved in the offenses in which Appellant was charged. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386 (2006), ¶ 37. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) (stating that

"sufficiency is a test of adequacy"); *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991). The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, (1979); *Jenks* at ¶ 273. Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at ¶ 390.

{¶8} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶9} On appeal, Appellant challenges the sufficiency of the evidence presented by the State in support of the offenses for which he was charged and convicted, illegal manufacture of drugs and illegal assembly or

possession of chemicals for the manufacture of drugs. More specifically, Appellant's contention is based upon his argument that the State failed to present any evidence that methamphetamine was a Schedule I or II drug. Appellant argues that because the State failed to introduce evidence on this point, that the trial court erred in denying his Crim. R. 29(A) motion. For the following reasons, however, we disagree.

{¶10} R.C. 2925.04(A) provides as follows: "No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.041(A) provides as follows:

> "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

Thus, both statutes reference "controlled substances" and "schedule I or II" drugs. Appellant contends that because the State did not present evidence to demonstrate that methamphetamine constitutes a schedule I or II controlled substance, the trial court should have granted his Crim.R. 29 motion.

{¶11} However, the determination of whether methamphetamine is a schedule I or II controlled substance under R.C. 3719.41 is a question of law to be determined by the court rather than a question of fact for the jury. *State v. Rollins*, 3rd Dist. Paulding No. 11-05-08, 2006-Ohio-1879, ¶ 30; see also *State v. Reed*, 14 Ohio App.3d 63, 68, 470 N.E.2d 150 (reasoning that the determination of whether a substance is a controlled substance under R.C. 3719.41 is one of law to be decided by the court and that the trial court may take judicial notice of the schedule of a drug.); *State v. Baxla II*, 4th Dist. Ross No. 1356, 1988 WL 4412 (finding no error with the fact that no evidence existed in the record to prove the schedule of the drug involved and noting that quick reference to the statute reveals the schedule). Based on the foregoing case law, we find no error in the State's failure to introduce evidence regarding the schedule of methamphetamine under R.C. 3719.41 and further find it was proper for the trial court to take judicial notice of that legal fact and instruct the jury accordingly. As a result we find no merit to this argument raised under Appellant's first assignment of error.

{¶12} Further, with regard to the more generalized sufficiency of the evidence analysis, because we have determined, under Appellant's fourth assignment of error, that Appellant's convictions are not against the manifest weight of the evidence, we find they are supported by sufficient evidence as

well.  " 'When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction.' " *State v. Leslie*, 4th Dist. Hocking Nos. 10CA17, 10CA18, 2011-Ohio-2727, ¶ 15; quoting *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34 (4th Dist.).  Thus, a conclusion that a conviction is supported by the weight of the evidence will also determine the issue of sufficiency.[1] *Leslie* at ¶ 15.  Accordingly, Appellant's first assignment of error is without merit and is, therefore, overruled.

## ASSIGNMENT OF ERROR II

**{¶13}**  In his second assignment of error, Appellant contends that the trial court erred by instructing the jury that he could be convicted as "either the principal offender or as an accomplice," when the indictment did not set forth that Appellant was charged with complicity.  Appellant further argues that not only was it improper for the trial court to instruct the jury on complicity, the trial court erred by only providing a partial instruction and leaving out required limiting language regarding accomplice testimony.  A review of the trial transcript reveals that Appellant objected to the trial

---

[1] As we noted in *Leslie*, the inverse proposition is not always true. For example, a conviction may pass a sufficiency analysis yet still fail to satisfy a manifest weight of the evidence challenge. *State v. Thompkins*, at ¶ 387.

court's provision of the jury instruction on complicity during trial and thus has preserved the issue for review.

{¶14} Generally, a trial court should give requested jury instructions if they are "correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991); quoting Markus & Palmer, Trial Handbook for Ohio Lawyers (3 Ed.1991) 860, Section 36:2. Moreover, R.C. 2945.11 requires a trial court to charge the jury with all the law required to return a verdict. Our review concerning whether jury instructions correctly state the law is de novo. *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 34. However, reversible error should not be predicated upon one phrase or one sentence in a jury charge; instead, a reviewing court must consider the jury charge in its entirety. *State v. Porter*, 14 Ohio St.2d 10, 13, 235 N.E.2d 520 (1968). Moreover, if an instruction correctly states the law, its precise wording and format are within the trial court's discretion. *Brown* at ¶ 34. To constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶15} A review of the record indicates that the trial court determined, based upon the evidence introduced by the State, that a complicity instruction including aiding and abetting language was warranted. R.C. 2923.03 governs complicity and provides, in pertinent part, as follows:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

* * *

(2) Aid or abet another in committing the offense[.]"

As set forth above, Appellant was indicted for illegal manufacture of drugs, a second degree felony in violation of R.C. 2925.04(A), and illegal assembly or possession of chemicals for the manufacture of drugs, a third degree felony in violation of R.C. 2925.041(A).

{¶16} " 'When the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor, a jury instruction by the trial court on that subject is proper.' " *State v. Dyer*, 4th Dist. Scioto No. 07CA3163, 2008-Ohio-2711, ¶ 19; quoting *State v. Perryman*, 49 Ohio St.2d 14, 358 N.E.2d 1040 (1976), paragraph five of the syllabus, vacated in part on other grounds by *Perryman v. Ohio*, 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156 (1978). " 'To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the

evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.' " *Dyer* at ¶ 19; quoting *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796, at the syllabus (2001).

{¶17} The indictment charged Appellant with these offenses as a principal offender. The evidence presented by the State at trial included testimony from Sergeant Chris Bowen and Lieutenant Randy Sanders. Sergeant Bowen testified that Appellant, Appellant's wife Bobbie Chandler, Jamie Whittkugle, Kevin Baines, Krista Adams and Dustin Lambert all resided with Appellant in his house, which was the subject of the search. At the time of the search, when a "one-pot meth lab" was found, all of these individuals were present in the residence. Above and beyond the "one-pot meth lab" that was found, multiple items used in the making of methamphetamine were located in Appellant's bedroom. Further, Lieutenant Sanders testified that he interviewed Appellant during the search and that Appellant himself stated he had purchased pseudoephedrine and "brought it back" presumably to the house they shared, to give to Kevin

Baines to manufacture meth.  He also told Lieutenant Sanders that Kevin cooked meth in the back bedroom.

{¶18}  In light of this testimony, we believe a jury instruction on complicity was warranted in that it demonstrates, by Appellant's own admission, that even if he was not manufacturing meth himself, he was purchasing and providing pseudoephedrine to Baines to manufacture meth in Appellant's own residence with Appellant's knowledge and consent.  He did this, according the Sanders' testimony, in exchange for meth to provide to his wife, Bobbie Chandler.  Thus, Appellant was, at a minimum, supporting, assisting, encouraging and cooperating with Baines in the manufacture of methamphetamine.  We believe such conduct certainly constitutes aiding and abetting in the manufacture of methamphetamine and thus, we cannot conclude that the trial court erred in instructing the jury on complicity.

{¶19}  Appellant also argues that he was prejudiced by the State's failure to include complicity in the indictment and that if he had known the State intended to pursue a theory of complicity, he would have presented some evidence in his defense.  However, we believe the language contained in the bill of particulars sufficiently put Appellant on notice that he might be subject to a complicity instruction.  For instance, the bill of particulars states that Appellant "did knowingly manufacture or engage in a part of the

production of methamphetamine." Such statement should have alerted

Appellant that the State might pursue a conviction against him as either a

principal offender or as an aider or abettor. Further, under R.C. 2923.03(F),

a defendant "may be convicted of [an] offense upon proof that he was

complicit in its commission, even though the indictment 'is stated * * * in

terms of the principal offense' and does not mention complicity." *State v.*

*Herring*, 94 Ohio St.3d 246, 251, 762 N.E.2d 940 (2002).

{¶20} Appellant's arguments under this assignment of error,

however, do not end here. Appellant also contends that the instruction

provided to the jury did not contain limiting language regarding the

accomplice testimony of Jamie Whittkugle and Krista Adams. However,

contrary to Appellant's argument and as noted by the State, the instruction

included the necessary limiting language regarding accomplice testimony.

R.C. 2923.03(D) provides as follows:

> "If an alleged accomplice of the defendant testifies against the
>
> defendant in a case in which the defendant is charged with
>
> complicity in the commission of or an attempt to commit an
>
> offense, an attempt to commit an offense, or an offense, the
>
> court, when it charges the jury, shall state *substantially* the
>
> following:

'The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.' " (Emphasis added).

{¶21} Here, a review of the record reveals that the trial court advised the jury as follows:

"Now, you heard testimony from Jamie Whittkugle, and other persons accused of the same crime charged in Count 2 in this case, and is therefore said to be an accomplice. An accomplice is one who knowingly assists or joins another in the commission of a crime. Whether Ms. Whittkugle was an accomplice, and the weight to give her testimony, are matters for you to determine from all of the facts and circumstances in evidence.

The testimony of an accomplice that is supported by other evidence does not become inadmissible because of her complicity, moral turpitude or self-interest, but the admitted or claimed complicity of a witness may affect her credibility and make her testimony subject to grave suspicion, and require it be weighed with great caution.

It is for you, as jurors, in light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality, or its lack of quality, and worth."

**{¶22}** Thus, a review of the trial transcript reveals that not only did the trial court substantially comply with the mandate contained in R.C. 2923.03(D), it strictly complied with it. As such, we find no merit in the last argument raised by Appellant under this assignment of error. Having found no merit in any of the arguments raised under Appellant's second assignment of error, it is overruled.

## ASSIGNMENT OF ERROR III

**{¶23}** In his third assignment of error, Appellant contends that the trial court erred in not merging his convictions for purposes of sentencing, claiming that his offenses were allied offenses of similar import. The

application of R.C. 2941.25[2] (the merger statute) is a legal issue. Thus, an appellate court will review a trial court's decision de novo without affording it any deference. See *State v. Love*, 4th Dist. Hocking No. 13CA16, 2014-Ohio-1603, ¶ 17; *State v. Osman*, 4th Dist. Athens No. 13CA22, 2014-Ohio-294, ¶ 16.

{¶24} In *State v. Nguyen*, 4th Dist. Athens No. 12CA14, 2013-Ohio-3170, ¶ 103, we set forth the analysis that applies when determining if offenses should merge under R.C. 2941.25:

"Through a series of opinions the Supreme Court of Ohio has advised and re-advised lower courts on the difficult task of applying Ohio's multiple-count statute to determine which criminal convictions require merger." [*State v. Delawder*, 4th Dist. Scioto No. 10CA3344, 2012–Ohio–1923, ¶ 39]. In the plurality decision of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Court expressly overruled its then current test for merger. Under the new test, the trial court must first determine 'whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without

---

[2] R.C. 2941.25(A) states "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

committing the other.' (Emphasis sic). *Johnson* at ¶ 48. If the offenses are so alike that the same conduct can subject the accused to potential culpability for both, they are 'of similar import' and the court must proceed to the second step. The court must then determine whether the offenses in fact were committed by the same conduct, i.e., committed as a single act with a single animus. Id. at ¶ 49. If so, merger is necessary. However, if the offenses resulted from separate acts or were performed with a separate animus, or if the commission of one offense will never result in the commission of the other, the offenses will not merge. Id. at ¶ 51."

**{¶25}** Here, the evidence presented at trial appears to satisfy the first part of this new test. It is possible to possess or assemble the chemicals necessary to manufacture meth, and then to manufacture the drug itself. The trial court specifically addressed the issue of merger during the sentencing hearing and stated as follows on the record with respect to the second prong of the analysis:

"From the evidence that's been presented, the Court has determined that these offenses were committed with a separate animus, and were not a single act with a single state of mind.

The evidence was presented that pseudoephedrine was being bought routinely; there were a number of items that were there in the bedroom that could be used, the coffee filters, the other items. There were one-pots that were in the trash; there were other bottles that were there to be used; and so that the evidence is such that it appears it was a regular occurrence at the Defendant's home. So, based upon that the Court will determine that the offenses do not merge for purposes of 2941.25."

{¶26} Although we employ a different analysis, we agree with the trial court's determination with regard to the second part of this test and therefore conclude that these crimes were not committed with the same conduct and with the same animus. While the trial court seemed to focus on the fact that the evidence at trial indicated methamphetamine had been manufactured multiple times on different days, we find more determinative the fact that Appellant appears to have purchased pseudoephedrine, cold packs and other material on different days that the actual manufacturing at issue in this case took place, as well as the fact that additional cold packs, over and above those needed to manufacture the meth made on November 1,

2013, were found in Appellant's bedroom during the search.  As testified by

Sergeant Bowen during trial:

> "[a] cold pack contains ammonia nitrate pellets.  Those
>
> ammonia nitrate pellets are mixed in the one-pot with sodium
>
> hydroxide, which is lye.  Both of those chemicals react together
>
> and produce ammonia gas, which it takes ammonia gas to break
>
> down your lithium battery."

This result is consistent with our reasoning recently set forth in *State v.*

*Sluss*, 4th Dist. Highland No. 13CA24, 2014-Ohio-4156.  In *Sluss*, we

determined that illegal manufacture of a controlled substance and possession

of chemicals used to manufacture a controlled substance were not allied

offenses of similar import where the evidence indicated that the appellant

had possessed the chemicals for more than a week between the two dates of

the illegal manufacture.  Id. at ¶ 22.  Part of our reasoning also involved the

fact that the appellant had chemicals "over and above" what he used in the

two "cooks" on the dates in question in that case, thus committing the crimes

with different conduct.  Id. at ¶ 31 (Harsha, J. concurring opinion).

{¶27}  Because we conclude that the offenses at issue involved

different conduct, they were not allied offenses of similar import and the

trial court did not err in refusing to merge them for purposes of sentencing.

Accordingly, we find no merit to Appellant's third assignment of error and it is overruled.

ASSIGNMENT OF ERROR IV

{¶28}  In his fourth and final assignment of error, Appellant contends that his convictions for possession and illegal assembly, and manufacture of methamphetamine were against the manifest weight of the evidence. Although Appellant seems to focus his argument under this assignment of error on his manufacture of methamphetamine conviction only, we will address both.  We begin by considering the proper standard of review.

{¶29}  When considering whether a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains a high degree of probative force and certainty required of a criminal conviction." *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 34; quoting *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998).  The reviewing court sits, essentially, as a " 'thirteenth juror' and [may]disagree [ ]with the fact finder's resolution of the conflicting testimony." *Fry*, supra; quoting *State v. Thompkins* at 387, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211 (1982). The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, but

keeping in mind that credibility generally is an issue for the trier of fact to resolve. *Fry*, supra, citing *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶30} The reviewing court may reverse the conviction if it appears that the factfinder, in resolving evidentiary conflicts, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, 678 N.E.2d 541; quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st.Dist.1983). On the other hand, we will not reverse a conviction if the State presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. *Fry,* supra; citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.

{¶31} Appellant was convicted of illegal manufacture of a controlled substance (methamphetamine), which is set forth in R.C. 2925.04(A) as follows: "[n]o person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." Appellant was also convicted of assembly or possession of chemicals used to manufacture a controlled substance with

intent to manufacture controlled substance, which is prohibited by R.C. 2925.041. R.C. 2925.0141(A) provides as follows:

> "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

{¶32} The evidence presented at trial consisted of testimony from Stanton Wheasler, an expert in substance identification and measurement, employed with BCI&I. Mr. Wheasler testified that the substance submitted by the State for testing, which was recovered during the search of Appellant's residence, contained 21.5 grams of methamphetamine. Sergeant Bowen testified that upon searching Appellant's residence on November 1, 2013, a "one-pot meth lab" was discovered in the freezer. Bowen testified that additional items involved in the manufacture of methamphetamine such as cold packs, coffee filters, clear tubing attached to the top of a bottle cap, a gas generator, and a gas mask were found in Appellant's bedroom. Other items, including an "old one-pot" were found in a burn barrel outside of Appellant's residence.

{¶33}  Lieutenant Sanders testified that Appellant informed him during the search that he had purchased pseudoephedrine on October 31, 2013, and had "brought it back" to Kevin Baines, who lived in Appellant's residence, for meth to be cooked by Baines.  According to Sanders, Appellant stated he had done that in order for his wife to get meth "for free." Krista Adams, another resident in the house, testified that she had seen Appellant making meth, explaining that she had seen him shaking a bottle in his room.  Although Adams conceded on cross-examination that she did not actually know how to make meth, on re-cross she testified that shaking a bottle is how she understood meth to be made.

{¶34}  Finally, Jamie Whittkugle testified.  Whittkugle also resided with Appellant and was present at the time of the search.  Whittkugle testified that she also had purchased pseudoephedrine and given it to her boyfriend Kevin Baines, who in turn gave it to Appellant.  She testified that Appellant cooked meth and that she would leave the house when that happened.  She further testified that bottles used for methamphetamine were burned in a burn barrel outside the house.  Although Whittkugle had charges pending against her as a result of the search, as discussed above, this fact was made known to the jury and the trial court gave a proper limiting instruction to the jury regarding accomplice testimony.

**{¶35}** In light of the foregoing, we find there was substantial evidence upon which the trier of fact reasonably could conclude that the essential elements of the above offenses had been established beyond a reasonable doubt. As such, Appellant's convictions are not against the manifest weight of the evidence. Accordingly, we find no merit to Appellant's fourth assignment of error and it is overruled.

**{¶36}** Having found no merit in any of the assignments of error raised by Appellant, the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED**.

## **<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Hoover, J.:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**